Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., | **No. C-11-01957 JCS** |
|         Plaintiff, | **PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY** |
|    v. | |
| DOES 1-48, | |
|         Defendants. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................ 2

III.  FACTS ............................................................................................................... 2

IV.  PLAINTIFF'S LEGAL BASIS FOR EXPEDITED DISCOVERY IN THIS MATTER .......... 4

   1.   Legal Standard for Expedited Discovery. ................................................. 4

   2.   Plaintiff Satisfies the Three-Pronged Seescandy.com Test. ...................................... 6

     (a)   Plaintiff identifies Doe Defendants with sufficient specificity. ......................... 6

     (b)   Plaintiff has adequately exhausted all possible means to identify Does. ................ 6

     (c)   Plaintiff's complaint would survive a motion to dismiss. ................................ 7

   3.   Plaintiff Satisfies the Semitool "Good Cause" Standard for Expedited Discovery. .............. 7

   4.   Doe Defendants Have No Legitimate Expectation of First Amendment Privacy ................. 9

V.   PLAINTIFF'S BASIS FOR JOINING DOES 1-188 ................................................ 10

   1.   Joinder is Appropriate in This Case. .................................................... 10

   2.   Legal Standard. .............................................................................. 10

   3.   Individuals Using the BitTorrent Protocol Engage in Deep and Sustained Collaboration With Their Fellow Infringers. .............................................. 13

     (a)   Comparing BitTorrent-based collaboration to collaboration in other cases ............ 13

     (b)   Distinguishing the BitTorrent and FastTrack file transfer protocols. ................. 15

   4.   Plaintiff's Allegations Satisfy the Legal Requirements of Joinder. ........................ 17

     (a)   Plaintiff has asserted a right to relief against the Doe Defendants jointly, severally or with respect to the same series of transactions and occurrences ............................ 17

     (b)   A question of law or fact common to all Doe Defendants will arise in this action. ......... 18

     (c)   Joinder will not result in prejudice to any parties or cause undue delay. ................ 18

     (d)   Plaintiff's pleadings differ materially from the pleadings in previously severed copyright infringement cases. .......................................................... 20

     (e)   Courts readily approve joinder in copyright infringement cases. ....................... 21

VI. CONCLUSION................................................................................................... 23

1

**TABLE OF AUTHORITIES**

2

3

**Cases**

4

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)........................................ 8

5

*Arista Records LLC v. Does 1-16*, Case. No. 08-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y.

6

Feb. 18, 2009) .......................................................................................... 23

7

*Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008).................................... 23

8

*Arista Records, LLC v. Does 1-27*, 527 F. Supp. 2d 240 (D. Me. 2008)................................ 22, 23

9

*Bautista v. Los Angeles County*, 216 F.3d 837 (9th Cir. 2000) ........................................ 12

10

*BMG Music v. Does 1-4*, Case No. 06-1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. 2006)......... 20

11

*Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162 (D.D.C. 1987) ................................. 12

12

*Call of the Wild Movie, LLC v. Does 1-1,062*, No. 1:10-cv-00455, Memorandum Opinion,

13

Doc. No. 40 (D.D.C. Mar. 22, 2011) (Howell, J.) ..................................................... 22

14

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ............................... 5, 6

15

*Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997) .................................................. 12

16

*Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7 (D.D.C. 2004) .................................... 12

17

*Elvis Presley Enter., Inc. v. Passport Video*, 349 F.3d 622 (9th Circuit 2003) ...................... 8

18

*Equidyne Corp. v. Does 1-21*, 279 F.Supp. 2d 481 (D. Del. 2003) ................................... 4, 15

19

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ............................................... 5

20

*Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001)........................................................ 9

21

*In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003)........................................ 8

22

*In re Gren*, 633 F.2d 825 (9th Cir. 1980)........................................................... 10

23

*In re High Fructose Corn Syrup Antitrust Litigation,* 293 F.Supp.2d 854 (C.D.Ill. 2003)

24

(Mihm, J.)............................................................................................. 17

25

26

27

28

*In the Matter of DirecTV, Inc. Case Pending in the Northern District of California*, Case No.

    02-5912, 2004 WL 2645971 (N.D. Cal. July 26, 2006) ........................................ 14

*Interscope Records v. Does 1-14,* 558 F.Supp.2d 1176 (D. Kan 2008)................................. 9

*Interscope Records v. Does 1–25*, 2004 U.S. Dist. Lexis 27782 (M.D. Fla. Apr. 1, 2004) .............. 20

*IO Group v. Does 1-435,* Case No. 10-4382, 2011 WL 445043 (N.D. Cal. Feb. 3, 2011) ......... 20, 21

*IO Group, Inc. v. Does 1-65*, 2010 U.S. Dist. LEXIS 114039, Case No. 10-4377 (N.D. Cal.

    2010) ................................................................................................ 5

*Laface Records, LLC v. Does 1-38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008) ........ 20

*Laxalt v. McClatchy*, 809 F.2d 885 (D.C. Cir. 1987) ...................................................... 10

*London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) ............................ 19

*Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926) .............................................. 11

*Mosely v. General Motors Corp.,* 497 F.2d 1330 (8th Cir. 1974) ...................................... 11

*Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC*, 204 F.R.D. 675 (D. Colo. 2002)........... 8

*Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418 (D. Colo. 2003).............. 7, 8

*Rocker Mgmt. LLC v. John Does*, WL 22149380, Case No. 03-MC-33 (N.D. Cal. 2003) ................ 5

*SEC v. Leslie, et al.*, No. C 07-3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010) ....................... 11

*Semitool v. Tokyo Electron America, Inc., et al.*, 208 F.R.D. 273 (N.D. Cal. 2002)............... 4, 5, 7, 8

*Sony Music Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004)......................... 9

*Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)................................. 22

*Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358 (2d Cir. 1974) ................................... 11

*Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551 (N.D. Ill. 1964) ....................................... 11

*Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753,

    Case No. 10-00335 (E.D. Cal. 2010) ................................................................ 4

*Turner v. LaFond and Does 1-20*, 09-0683, 2009 WL 34000987 (N.D. Cal. Oct. 20, 2009) ...... 12, 18

*Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-4862 (N.D. Cal. Nov. 16, 2004) ............. 20

*U.S. ex rel. Anthony v. Burke Engineering Co.*, 356 F.Supp.2d 1119 (C.D. Cal. 2005) ................... 12

*U.S. v. Hambrick*, 55 F.Supp.2d 504 (W.D. Va. 1999), *aff'd*, 225 F.3d 656 (4th Cir. 2000).............. 9

*UMG Recordings, Inc. v. Does 1-4*, 64 Fed. R. Serv.3d 305 (N.D. Cal. 2006).......................... 5, 8, 9

*UMG Recordings, Inc. v. John Doe*, 2008 U.S. Dist. LEXIS 79087, Case No. 08-1193 (N.D.
    Cal. 2008)............................................................................................................................... 8

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ....................................................... 11

*United States v. Testa*, 548 F.2d 847 (9th Cir. 1977)........................................................ 11

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) ...................................................... 4

*Warner Bros. Records, Inc. v. Does 1-6*, 527 F.Supp. 2d 1 (D.D.C. 2007)...................... 4, 7

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612 (D. Ariz. 2001) ........................ 7

*Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL 4313777 (N.D. Cal. Oct. 26, 2010).................. 11

*Zoosk Inc. v. Does 1-25*, 2010 U.S. Dist. LEXIS 134292 (N.D. Cal. 2010) ....................................... 5

**Statutes**

17 U.S.C. § 106(1)(3) ....................................................................................................... 7

**Other Authorities**

Jessica Wood, *The Darknet: A Digital Copyright Revolution*, XVI Rich. J.L. & Tech. 14
    (2010).................................................................................................................... 15

**Rules**

Fed. R. Civ. P. 20 ............................................................................................. 10, 11, 12, 17

Fed. R. Civ. P. 21 ........................................................................................................... 10

**Treatises**

7 C. Wright Federal Practice and Procedure § 1653 ........................................................ 11

Schwarzer, Tashima, and Wagstaffe, *Cal. Prac. Guide Fed. Civ. Pro. Before Trial* Ch.

16:160.3 .......................................................................................................................... 12

**PLAINTIFF'S *EX PARTE* APPLICATION FOR, AND MEMORANDUM OF LAW IN SUPPORT OF, LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

Plaintiff Hard Drive Productions, Inc., by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure ("FRCP") 26 and 45, hereby moves this Court *ex parte* for an Order permitting Plaintiff to take limited discovery prior to the FRCP 26(f) conference. Plaintiff's Application is in accordance with the Court's Local Rule ("L.R.") 7-10, as it is authorized under FRCP 26(d) and 45.

Plaintiff hereby respectfully requests this matter be heard, or a decision be reached without a hearing, by the Court as soon as is practicable. As described below, due to the nature of Plaintiff's investigation, time is of the essence when identifying the Doe Defendants.

## I.      INTRODUCTION

Plaintiff Hard Drive Productions, Inc. filed this action to stop Defendants from reproducing and distributing to others over the Internet unauthorized copies of its unique content (hereinafter "the Works"), and to pursue monetary damages from Defendants. Using so-called "peer-to-peer" (hereinafter "P2P") file "swapping" networks, Defendants' copyright infringements allow them and untold others to unlawfully obtain and distribute for free and without Plaintiff's permission the copyrighted Works that Plaintiff has invested substantial sums of money to create. Plaintiffs are suing Defendants as Doe Defendants because Defendants committed their infringement under the cover of Internet Protocol (hereinafter "IP") addresses, as opposed to using their actual names. Plaintiff has identified Doe Defendants' IP addresses (as well as other pertinent information), and attached this list to the Complaint as Exhibit A (DKT #1 at 13.)

Plaintiff seeks leave of Court to serve *limited* discovery prior to a Rule 26(f) conference on several enumerated non-party Internet Service Providers ("ISPs") *solely* to determine the true identities of Doe Defendants that Plaintiff will fully identify during the course of this litigation, as Plaintiff's infringement prevention efforts are on-going and continuing. The only way that Plaintiff can determine Defendant's actual names is from the ISPs to which Defendants subscribe and from

which Defendants obtain Internet access. This information is readily available to the ISPs from documents they keep in the regular course of business, and getting it is of minimal effort to them.

## II. BACKGROUND

This request is far from unique. Granting such applications is commonplace. Over the past decade, federal district courts throughout the Ninth Circuit and the United States, including this Court, have freely permitted expedited discovery in Doe Defendant lawsuits with factually interchangeable scenarios.

As this Court is aware, in these types of cases, copyright-holder plaintiffs use information similar to that gathered by Plaintiff in the instant case as the basis for their proposed subpoenas to the ISPs. As evidenced by the various court opinions, such information is sufficient for such expedited subpoenas. Through the information they gather from the ISPs via these subpoenas, the plaintiffs are able to fully "identify" – i.e. retrieve name, address, telephone number, e-mail address, and Media Access Control (hereinafter "MAC") information – each P2P network user suspected of violating the plaintiff's copyright. As the Court understands, usually, in the interest of due process, the court will order the ISP to adequately notify the network user whose contact information was turned over to the plaintiff that such action has occurred, giving them ample opportunity to respond. Once the plaintiff has a doe defendant's contact information, the defendant will be contacted and formally named in the suit, service will be effectuated, and the case will be allowed to proceed as usual. (*See* Decl. of Brett L. Gibbs (hereinafter "Gibbs Decl.") ¶ 4, Exhibit B to this Application).

Plaintiff respectfully requests that this Court follow the well-established precedent, and grant this application for leave to take expedited discovery against those ISPs listed in Exhibit A to the Complaint (DKT #1 at 13.)

## III. FACTS

Doe Defendants, without authorization, used an online P2P media distribution system to download Plaintiff's copyrighted works and distribute Plaintiff's copyrighted works to the public,

including making Plaintiff's copyrighted works available for distribution to others. (*See* DKT #1.). Defendants operated under the cover of network addresses when they swarmed and distributed Plaintiff's copyrighted works.  As such, Plaintiff is unaware of Doe Defendants actual names. (*See* Declaration of Peter Hansmeier (hereinafter "Hansmeier Decl.") ¶¶ 21-22, Exhibit A to this Application.)  As referenced above, Plaintiff has identified each Doe Defendant by a unique IP address, assigned to him/her by his/her ISP on the date and at the time of the Doe Defendant's infringing activity. (*See Id.* ¶ 15.)  Plaintiff, by and through its investigators, also made a copy of substantial portions of the copyrighted work that each Defendant unlawfully distributed or made available for distribution through the file sharing networks, and confirmed such files contained the work that was copyrighted by Plaintiff. (*See Id.* ¶ 19.)  A technician collected this data through specific systems and procedures designed to ensure that the information gathered on each Doe Defendant was accurate. (*See Id.* ¶ 12.)

By using Media Copyright Group, LLC's ("MCG") proprietary file sharing forensic software to capture the unique IP address of each Doe Defendant, Plaintiffs have been able to identify certain ISPs that provided Internet access and unique IP addresses to each Doe Defendant. (*See Id.* ¶¶ 15-17.)  When provided with a Doe Defendant's IP address and the date and time of the infringing activity, an ISP can accurately identify the Doe Defendant (i.e. provide Plaintiff with the Doe Defendant's necessary contact information) because such information is contained in the ISP's subscriber activity log files. (*See Id.* ¶¶ 21-22.)  In light of the fact that infringement of Plaintiff's Works is ongoing, Plaintiff will continue to monitor torrent-based infringement of the Works, and, by this application, seeks the ability to pursue claims for copyright infringement against later-identified infringers. (*See Id.* ¶ 24; *see also* Gibbs Decl. ¶ 3.)

In Plaintiff's case, time for discovery is of the essence. (*See* Gibbs Del. ¶ 5.)  Typically, ISPs keep log files of subscriber activities for only limited periods of time before erasing the data.  Sometimes this storage may only last for only weeks or even days. (*See Id.* ¶¶ 21-22.)  Some ISPs

lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. (*See Id.* ¶ 23.) These lessor ISPs, therefore, have no direct contractual or business relationship with the end-user. Because of this detachment, they are unable to identify the Doe Defendants through their logs on their own without the assistance of their intermediary ISPs that should be able to identify the Doe Defendants by reference to their own user logs and records working in conjunction with the lessor ISPs. (*See Id.* ¶ 23.)

## IV. PLAINTIFF'S LEGAL BASIS FOR EXPEDITED DISCOVERY IN THIS MATTER

### 1. *Legal Standard for Expedited Discovery.*

As Magistrate Judge Chen has pointed out, courts have wide discretion in organizing discovery. *See Semitool v. Tokyo Electron America, Inc., et al.*, 208 F.R.D. 273 (N.D. Cal. 2002). Courts typically allow for expedited discovery "in the interests of justice" under Rule 26(d). *See, e.g, Id.; Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753, Case No. 10-00335 (E.D. Cal. 2010). Courts commonly find it "in the interests of justice" to allow accelerated discovery to identify doe defendants. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("…district court erred in dismissing [Plaintiff's] complaint against Doe simply because [Plaintiff] was not aware of Doe's identity at the time he filed the complaint."); *Equidyne Corp. v. Does 1-21*, 279 F.Supp. 2d 481, 483 (D. Del. 2003) (district court granted expedited discovery motion to allow the plaintiff to identify unknown defendants). In similarly situated copyright infringement actions brought by other motion picture studios, record companies, and producers against doe defendants, courts have consistently granted plaintiffs' motions for leave to take expedited discovery to serve subpoenas on ISPs to immediately obtain the identities of doe defendants prior to a Rule 26(f) conference. *See Warner Bros. Records, Inc. v. Does 1-6*, 527 F.Supp. 2d 1 (D.D.C. 2007) (plaintiff requests, and court allows, expedited Rule 45 subpoena service on Georgetown University to obtain identifying information – including name, current and permanent addresses, telephone numbers, email addresses, and MAC addresses – of doe defendants).

This Court's rulings have steadfastly followed this established rule. *See, e.g., UMG Recordings, Inc. v. Does 1-4*, 64 Fed. R. Serv.3d 305 (N.D. Cal. 2006); *IO Group, Inc. v. Does 1-65*, 2010 U.S. Dist. LEXIS 114039, Case No. 10-4377 (N.D. Cal. 2010); *Zoosk Inc. v. Does 1-25*, 2010 U.S. Dist. LEXIS 134292 (N.D. Cal. 2010).

When the identity of a doe defendant is indeterminable at the time the complaint is filed, the plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Based in part on *Gillespie*, a three-prong expedited-discovery-qualifying test was outlined by this Court in *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999). In order for a plaintiff to qualify for expedited discovery to identify nameless Internet users, the plaintiff must: (1) show whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity capable of being sued in federal court; (2) identify all previous steps taken to locate elusive defendant; and (3) establish that the suit could withstand a motion to dismiss. *Seescandy.com*, 185 F.R.D. at 578-578; *see also Rocker Mgmt. LLC v. John Does*, WL 22149380, Case No. 03-MC-33 (N.D. Cal. 2003) (court interprets and applies *Seescandy.com* standard in allowing limited expedited discovery).

In determining whether a plaintiff is entitled to expedited discovery in identifying a doe defendant, the district courts in the Ninth Circuit implement an overarching "good cause" standard. *See Semitool,* 208 F.R.D. at 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*; *see also UMG Recordings,* 64 Fed. R. Serv.3d 305 (Magistrate Judge Edward M. Chen perfectly lays out all of the issues, analyzes the application of rules to facts, and concludes that the plaintiff is entitled to leave to take immediate discovery).

**2.** *Plaintiff Satisfies the Three-Pronged Seescandy.com Test.*

(a) Plaintiff identifies Doe Defendants with sufficient specificity.

As required, Plaintiff has sufficiently identified the Doe Defendants through locating the unique IP address each Doe Defendant was assigned at the time of the unauthorized distribution of the copyrighted Works. (Hansmeier Decl. ¶¶ 15-17); *see also, e.g.*, *Seescandy.com*, 185 F.R.D. at 578-580 (such information satisfies "sufficient specificity" prong). These Doe Defendants gained access to the Internet through their respective ISPs (undercover of an IP address) only by setting up an account with the various ISPs. (Hansmeier Decl. ¶¶ 15-17.) The ISPs can identify each Defendant by name through the IP address by reviewing its subscriber activity logs. (*See Id*. ¶¶ 21-23.) Thus, Plaintiff can show that all Defendants are "real persons" whose are known to the ISP and who can be sued in federal court. Plaintiff simply requests that this Application be granted so that Plaintiff can match the IP address with its "real person" counterpart.

(b) Plaintiff has adequately exhausted all possible means to identify Does.

Plaintiff has exhausted all possible means to attempt to find the Doe Defendants' names, addresses, phone numbers, email addresses, and MAC addresses. Plaintiff lacks any other means to obtain the subpoenaed information expect from discovery through the ISPs themselves. Plaintiff has specifically identified the steps taken to identify Doe Defendants' identities. (*See Id.* ¶¶ 12-20.) Plaintiff has obtained each Doe Defendant's IP addresses and the date and time of the Defendant's infringing activities, have traced each IP address to specific ISPs, and has made copies of the Works each Defendant unlawfully distributed or made available for distribution. (*Id.* ¶¶ 15-18.) At this point, Plaintiff has obtained all of the necessary information it possibly can on each Doe Defendant without discovery from the ISPs. (Gibbs Decl. ¶ 3.) Plaintiff needs this limited information from the ISPs to simply connect the dots.

(c)     Plaintiff's complaint would survive a motion to dismiss.

If the Court denies this Application, the Court would strike a fatal blow in Plaintiff's otherwise meritorious case. (*See* Gibbs Del. ¶ 2.)  Ascertaining the true identities of these copyright infringers is the only thing holding this case back from proceeding forward. (*See Id.* ¶ 4.)  The only way to timely ascertain these identities is for the Court to grant this application.

Plaintiff has asserted a *prima facie* claim for direct copyright infringement in its Complaint that can withstand a motion to dismiss.  Specifically, Plaintiff has alleged that: (a) it owns the exclusive reproduction and distribution rights, and exclusive rights under the copyright for the Works for which a valid application for registration has been filed, and (b) the Doe Defendants copied or distributed the copyrighted Works without Plaintiff's authorization. *See* Complaint.  These allegations adequately state a claim for copyright infringement. *See* 17 U.S.C. § 106(1)(3); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights.  Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003).

There is little question that the Doe Defendants violated Plaintiff's rights.  Now Plaintiff simply must be allowed to identify who they are.

### 3.     *Plaintiff Satisfies the Semitool "Good Cause" Standard for Expedited Discovery.*

As Magistrate Judge Chen stated in *Semitool*, "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." 208 F.R.D. at 276.  Courts have wide discretion in discovery matters and in interpreting "good cause." *See Id.; Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001); *Warner Bros.*, 527 F.Supp.2d at 2.

In this case, good cause exists because knowing the true identities of the copyright violators, and thus allowing Plaintiff to carry forward with its case, outweighs negligible prejudice to the copyright violating Doe Defendants and the ISPs.

Good cause exists here because ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. (*See* Hansmeier Decl. ¶¶ 21-23; Gibbs Decl. ¶ 6.) If that information is erased, Plaintiff will have no ability to fully identify the Doe Defendants, and thus will be unable to pursue a lawsuit protecting itself against their devious copyrighting tactics. *Id.* Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause exists for expedited discovery under FRCP 26(d). *Qwest Comm.*, 213 F.R.D. at 419; *see also Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC*, 204 F.R.D. 675, 676 (D. Colo. 2002) (court allowed for expedited discovery where evidence would not be available to the plaintiff in the normal course). Put simply, Plaintiff may lose the ability to bring this suit without being able to timely serve the ISPs with subpoenas.

Good cause also exists because Plaintiff's claim for copyright infringement presumes irreparable harm to copyright owner. *See UMG Recordings, Inc. v. John Doe*, 2008 U.S. Dist. LEXIS 79087, Case No. 08-1193 (N.D. Cal. 2008) (the Honorable Judge Armstrong noted that, "In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and *there is a risk an ISP will destroy its logs prior to the conference*… This is because, in considering 'the administration of justice,' early discovery avoids ongoing, continuous harm to the infringed party and there is no other way to advance the litigation."); *see also Semitool*, 208 F.R.D. at 277; *Elvis Presley Enter., Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Circuit 2003). Not only will

Plaintiff's suit will be fatally damaged if not permitted to conduct expedited discovery, but Plaintiff's own unique copyrighted Works will be instantly devalued if the Court denies this motion.

### 4. Doe Defendants Have No Legitimate Expectation of First Amendment Privacy

As Magistrate Judge Chen pointed out in *UMG Recordings*, Doe Defendants who "open[ed] their computers to others through peer-to-peer sharing" and signed service agreements with ISPs that did not have privacy stipulations, "had little expectation of privacy." 64 Fed. R. Serv.3d at 305. The Doe Defendants here fall under this purview for the same reasons. The Doe Defendants are, at best, involved in quasi-speech, and Plaintiff's overriding interests in protecting its copyright overshadow any limited speech implications on the part of the Defendants. They have no legitimate expectation of privacy in the subscriber information they voluntarily provided to third-parties, i.e. the ISPs, much less in downloading and distributing copyrighted Works without Plaintiff's permission. *See id.*; *see also Sony Music Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (court finds that "defendants have little expectations of privacy in downloading and distributing copyrighted songs without permission"); *Interscope Records v. Does 1-14,* 558 F.Supp.2d 1176, 1178 (D. Kan 2008); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001); *U.S. v. Hambrick*, 55 F.Supp.2d 504, 508 (W.D. Va. 1999), *aff'd,* 225 F.3d 656 (4th Cir. 2000).

Doe Defendants copied and distributed the Works without authorization under the cover of their IP addresses, and, therefore, their conduct was not entirely anonymous. They still are identifiable by the ISPs. Using publicly available technology, the unique IP address assigned to each Defendant at the time of infringement can be readily identified. (*See* Hansmeier Decl. ¶¶ 12-20.) When Doe Defendants entered into a service agreement with the ISPs, they knowingly and voluntarily disclosed personal identification to it. As set forth above, this identification information is linked to the Doe Defendants' IP addresses at the time of infringement, and recorded in the ISPs' respective subscriber activity logs. Since Doe Defendants can, as a consequence, have no legitimate expectation of privacy in this information, this Court should grant Plaintiff leave to seek expedited

discovery of their indentifying information.  Absent such leave, Plaintiff will be unable to protect its copyright its copyrighted Works from continued infringement.

Where federal privacy statutes authorize disclosure pursuant to a court order, courts have held that a plaintiff must make no more than a showing of relevance under the traditional standards of Rule 26. *See Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987); *see also In re Gren*, 633 F.2d 825 n.3 (9th Cir. 1980) ("court order . . . [only requires] good faith showing that the consumer records sought are relevant.")  Clearly, Plaintiff meets the relevance standard.

## V.    PLAINTIFF'S BASIS FOR JOINING DOES 1-188

### 1.    *Joinder is Appropriate in This Case.*

In the event this Court has any questions on joinder of Doe Defendants in this matter, Plaintiff will put those questions to rest over the following pages.  Joinder is appropriate at this stage of the case for two key reasons.  First, individuals using the BitTorrent protocol engage in deep and sustained collaboration with their peers.  This characteristic makes the BitTorrent protocol materially distinguishable from less-advanced file transfer protocols.  It also leaves individuals who use the protocol for illegal ends susceptible to being joined in a single action.  Second, Plaintiff's allegations exhaustively satisfy the pleading requirements for joinder at this stage of the litigation.

### 2.    *Legal Standard.*

Pursuant to FRCP 20,

Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action. FRCP 20(a)(2).

"Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms add or drop a party." FRCP 21. The determination of whether to sever parties "involves the sound discretion of the trial court." *United States v. Testa*, 548 F.2d 847,

856 (9th Cir. 1977). "Application of Rule 21 involves consideration of *convenience* and *fairness* [and] [i]t also presupposes basic conditions of separability in law and logic." *SEC v. Leslie, et al.*, No. C 07-3444, 2010 WL 2991038 at *4 (N.D. Cal. July 29, 2010) (Fogel) (internal quotations omitted; emphasis added). "Rules 20 and 21 are intended to promote trial convenience, to expedite the determination of litigation, and *to avoid multiplicity of suits*." *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554 (N.D. Ill. 1964).

While joinder rules are discretionary in nature, a trial court's discretion is not without limit. As the Supreme Court stated in *United Mine Workers v. Gibbs*, joinder rules should be liberally construed, as "[j]oinder of claims, parties and remedies is strongly encouraged." *Gibbs*, 383 U.S. 715, 724 (1966). The Second Circuit stated, "an attempt to separate an essentially unitary problem is an abuse of discretion." *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) (emphasis added); *see also Leslie*, 2010 WL 2991038 at *4 (citing the abuse of discretion standard set forth in *Spencer, White & Prentis, Inc.*); *Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL 4313777 at *1 (N.D. Cal. Oct. 26, 2010) (Chesney).

In satisfying the first prong of FRCP 20(a), "the courts seem to have adopted a case-by-case approach." 7 C. Wright Federal Practice and Procedure § 1653. Generally, the courts look to FRCP 13(a) (dealing with counterclaims), and adopt the same construction of the terms "transaction or occurrence." FRCP 20. "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926). As the Eighth Circuit explains, "[a]ccordingly '*logically related*' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would *permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding*." *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (emphasis added). The Ninth Circuit also follows the logical

relationship test. *See Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000). Claims possess sufficient factual similarity if they "arise out of a systematic pattern of events." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *see also U.S. ex rel. Anthony v. Burke Engineering Co.*, 356 F.Supp.2d 1119, 1121-2 (C.D. Cal. 2005) (finds that both tests are the same). No matter what test is used, both are flexible and promote joinder where practicable. *See Mosely*, 497 F.2d at 1334; *Anthony*, 356 F.Supp.2d at 1121; *Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004).

The second prong of FRCP 20(a) requires that alleged claims share a common question of law or fact. "The rule does not require that all questions of law and fact raised by the dispute be common. . . . [C]ommon questions have been found to exist in a wide range of context." *Mosely*, 497 F.2d at 1334; *see also, e.g.*, *Turner v. LaFond and Does 1-20*, 09-0683, 2009 WL 34000987, at *4 (N.D. Cal. Oct. 20, 2009) (The Honorable Judge Patel, in finding joinder proper, finds that, although plaintiff's "claims arise out of disparate factual circumstances, the primary thrust of their allegations is identical…").

Lastly, the court should consider whether an order under Rule 21 would prejudice any party or would result in undue delay. *See Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C. 1987) (finding that Rule 21 must be read in conjunction with Rule 42(b)). The Court must also take into consideration judicial economy in understanding whether combined, as opposed to separate, trial would be "conducive to expedition and economy." Schwarzer, Tashima, and Wagstaffe, *Cal. Prac. Guide Fed. Civ. Pro. Before Trial* Ch. 16:160.3; *see also Leslie, et al.*, 2010 WL 2991038 at *4 (Judge Fogel finds that severance would not result in judicial economy, but a waste of judicial resources).

**3.** **_Individuals Using the BitTorrent Protocol Engage in Deep and Sustained Collaboration With Their Fellow Infringers._**

Individuals using the BitTorrent protocol engage in deep and sustained collaboration with their fellow infringers. The degree of this collaboration can be understood by comparing the nature of collaboration in the _DirecTV_ line of cases, the copyright infringement cases involving older peer-to-peer file transfer protocols, and the present case involving the BitTorrent protocol. Further, this collaboration can be understood by comparing technical specifications of the FastTrack protocol—the protocol associated with many oft-cited misjoinder decisions—to the specifications of the BitTorrent protocol.

(a)     Comparing BitTorrent-based collaboration to collaboration in other cases.

In a line of cases commonly known as "the _DirecTV_ cases," DirecTV sued significant numbers of alleged satellite TV pirates, and, at least initially, brought the suits as mass actions against thousands of defendants. When confronted with joinder questions, attorneys for DirecTV understood, given the non-collaborative nature of satellite TV piracy, that there was no connectivity between the defendants aside from the fact that they were all committing the same unlawful acts. DirecTV readily admitted in those cases that there was "no evidence that defendants acted in concert with each other or had any relationship with each other." Ultimately, this district found that the "transactionally unrelated defendants" should not be joined. _See In the Matter of DirecTV, Inc. Case Pending in the Northern District of California_, Case No. 02-5912, 2004 WL 2645971 (N.D. Cal. July 26, 2006).

Beginning in the late 1990's, a wave of multi-defendant copyright infringement cases were filed across the United States against individuals who used early generation peer-to-peer file transfer protocols to illegally obtain copyrighted works—typically music files. The networks associated with these lawsuits (e.g. Kazaa) were generally based on file transfer protocols that involved peer-to-peer sharing on a one-to-one basis. In other words, an infringer would connect with a single user to

1   download an entire copy of a file. The courts were mixed on allowing joinder in these cases

2   (discussed below). On the one hand, there was a degree of interconnectivity between infringers

3   because the infringers had to connect to one other infringer to secure a copy of a file. On the other

4   hand, the interconnectivity was limited by the one-to-one nature of the file transfers. Certain courts

5   determined that joinder was appropriate in these cases. Others disagreed. Notably, many of the

6   cases that were ultimately severed involved pleadings that failed to *allege* connectivity between the

7   putative defendants. Indeed, the joinder pleadings in these cases were not substantially different

8   than the pleadings in the *DirectTv* cases.

9   

10      Recently, the BitTorrent protocol has assumed a leading position among the peer-to-peer file

11  transfer protocols. Unlike antiquated protocols, an infringer does not connect with a single user to

12  download a file. Instead, an infringer connects with dozens, if not hundreds, of users (collectively

13  referred to as the "swarm") to distribute a file. (*See* Hansmeier Decl. ¶ 10.) This greater

14  interactivity makes the BitTorrent protocol among the most reliable, efficient and robust methods for

15  transferring data. (*Id.* ¶ 7.) It also makes its users susceptible to being joined with their co-

16  conspirators.

17      Using BitTorrent is substantially more complicated than streaming content from an instant-

18  watch website such as YouTube, or even downloading from Napster. First, a user must download

19  software that executes the BitTorrent file transfer protocol. (*Id.* ¶ 9.) Next, a user must locate a

20  "torrent" file, which contains information about the file being shared and information about the

21  location of the swarm. (*Id.*) Users typically visit torrent indexing sites, such as ThePirateBay.org, to

22  search for torrent files. Then, the user must load the torrent file into the BitTorrent software, which

23  uses information contained in the torrent file to connect to the swarm and begin downloading and

24  distributing the file. (*Id.* 9.) Suffice it to say, BitTorrent users must possess an above-average level

25  of computer savvy to successfully acquire illegal content via the BitTorrent protocol.

26  

27  

28

1

(b)     Distinguishing the BitTorrent and FastTrack file transfer protocols.

2

The peer-to-peer ("P2P") protocol underlying the decisions most frequently cited in past

3

copyright infringement misjoinder decisions is the FastTrack protocol.  FastTrack was an early peer-

4

to-peer protocol utilized and made popular by a notorious digital piracy program called Grokster.

5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*. 545 U.S. 913, 621 (2005); *see also* Jessica

6

Wood, *The Darknet: A Digital Copyright Revolution*, XVI Rich. J.L. & Tech. 14, 21–27 (2010),

7

http://jolt.richmond.edu/v16i4/article14.pdf (discussing evolution of file-sharing protocols from

8

centralized networks to "semi-distributed hybrid systems, such as the FastTrack protocol" to fully-

9

distributed protocols, such as BitTorrent, which "make collaboration [among users] mandatory").

10

Despite its name, FastTrack was slow and inefficient.  Unlike BitTorrent, which breaks up a file into

11

small, easily shareable pieces, FastTrack operated using whole files, one peer to one other peer.  (*Id.*)

12

Unlike BitTorrent users, who can receive many pieces of a given file from hundreds of different

13

users, FastTrack users could only download from one person at a time, meaning that multiple

14

downloads between different users over different times are separate and discrete actions.  Unlike

15

BitTorrent users, who start uploading as soon as they receive any part of the file, FastTrack users

16

have to wait until fully completing a download before they could begin uploading.  Unlike the

17

BitTorrent protocol, FastTrack severely limited the upload—and thus, distribution—capabilities of a

18

user because it operated using whole files, not pieces.

19

20

The BitTorrent protocol, on the other hand, involves a much higher degree of interactivity

21

than one-to-one file distribution. (*See* Hansmeier Decl. ¶¶ 4-10.)  First, the protocol breaks a single

22

large file into a series of smaller distributable pieces. (*Id.*)  Then, an initial file-provider (the

23

"seeder") intentionally elects to distribute the pieces to third parties. (*Id.*)  This is called "seeding."

24

Other users ("peers") on the network download a small "torrent" file that contains directions on

25

where to find the seeder as well as an index of the pieces. (*Id.*)  The torrent file is loaded into

26

BitTorrent software, and the software follows the directions in the torrent file to connect to the

27

28

seeder. (*Id.*) When peers connect to the seeder, they download random pieces of the file being seeded. When a piece download is complete, the peers automatically become seeders with respect to the downloaded pieces. (*Id.*) In other words, each peer in a swarm transforms from a pure downloader (a "leecher" in BitTorrent vernacular) to a peer that is simultaneously downloading and distributing pieces of a file. (*Id.*) By this mechanism, each peer collaborates with others in the swarm to complete the distribution of a file. (*Id.*) A piece shared by the initial seeder or any later seeders will be distributed amongst the peers countless times over—even if the seeder leaves the swarm. (*Id.*) Users can be connected to one another over the span of weeks simply via the initial download.

Unlike FastTrack where interaction is simply between one uploader and one downloader, each new peer in a BitTorrent swarm receives a different piece of data from users who have already downloaded that piece of data. (*Id.*) In turn, every "node"—or peer user who has a copy of the infringing copyrighted material (or even a portion of a copy)—is also a source of download for that infringing file, potentially both copying and distributing the infringing work simultaneously. (*Id.*)

The BitTorrent file distribution protocol leads to a rapid viral spreading of a file through willful peer users, all of whom are both *intentionally* uploading and downloading portions of the file simultaneously. (*Id.*) As more peers *intentionally* join the swarm for the copyrighted Works, the likelihood of a successful download increases. (*Id.*) Due to the nature of the BitTorrent protocol, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even a likely, source of the file for the subsequent peer. (*Id.*) Indeed, a majority of the prominent adult content torrent-indexing websites mandate that users maintain a minimum upload/download ratio, which means that users who download a file via the BitTorrent protocol are highly likely to serve as seeders in order to assure that they meet ratio requirements. Essentially, because of the nature of the swarm downloads (see *infra* IV Facts section), every infringer is simultaneously illegally downloading and distributing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions

around the country—although this lawsuit is isolated to peers who are believed to be located exclusively in California.

### 4. Plaintiff's Allegations Satisfy the Legal Requirements of Joinder.

Plaintiff has sufficiently pled joinder at this stage of the litigation. Plaintiff's allegations regarding BitTorrent-based interactions amongst the Doe Defendants and civil conspiracy allegations readily satisfy the first prong of FRCP 20(a)(2). Further, Plaintiff's complaint identifies at least five common questions of law or fact, thus satisfying the second and final prong of FRCP 20(a)(2). Finally, joinder at this stage of the litigation does not violate the implied requirement against prejudice to the parties. In similar cases courts have not found misjoinder.

> (a) Plaintiff has asserted a right to relief against the Doe Defendants jointly, severally or with respect to the same series of transactions and occurrences.

Plaintiff's allegations readily satisfy the first prong of FRCP 20(a). Specifically, Plaintiff has alleged that each Doe Defendant intentionally entered a torrent swarm specific to the Work at subject in this action and illegally reproduced and distributed pieces of the file amongst the other Doe Defendants in this action. Plaintiff's allegations are not restricted to the "committing the same illegal act" style allegations that doomed joinder attempts in prior actions. Here, Plaintiff has actually asserted that Defendants collaborated with one another—both contemporaneously and over time—to maintain swarms that allowed thousands of infringers to illegally obtain copies of Plaintiff's copyrighted work. Indeed, Plaintiff has asserted a count for civil conspiracy against the Doe Defendants and asked the Court to find Defendants jointly and severally liable to Plaintiff for the damages caused by their tortious activity. Courts typically do not sever cases involving civil conspiracy allegations. *See In re High Fructose Corn Syrup Antitrust Litigation,* 293 F.Supp.2d 854 (C.D.Ill. 2003) (Mihm, J.) ("[D]iligent research by both parties and the Court has uncovered no case in which a Rule 21 severance has been granted in a civil conspiracy case.") Even though all of the Doe Defendants may not have been physically present in the swarm on the exact same day and time,

all of the events involving the Doe Defendants are logically related to the illegal distribution of a single file and consist of the same series of transactions or occurrences because all of the Defendants served to maintain the existence of the swarm by reproducing and distributing pieces amongst the swarm participants. Thus, all Doe Defendants participated in maintaining the interwoven conspiracy.

Based on these allegations, Plaintiff's claims against the Doe Defendants are logically related. Each defendant is a possible source of Plaintiff's file, and may be responsible for distributing the file to the other defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material. While the Doe Defendants may be able to rebut these allegations later, Plaintiff has sufficiently alleged that its claims against the Doe Defendants potentially stem from the same transaction or occurrence, and are logically related.

(b)    A question of law or fact common to all Doe Defendants will arise in this action.

Plaintiff's complaint lists multiple common questions of law and fact that will arise in this action. Examples of such common questions include: 1) whether Plaintiff is the exclusive rightsholder in the copyrighted work at issue in this action; 2) whether "copying" has occurred within the meaning of the Copyright Act; 3) whether entering a swarm constitutes a willful act of infringement; 4) whether entering a swarm constitutes civil conspiracy; and 5) the extent to which Plaintiff has been damaged by the Doe Defendant's conduct. Plaintiff has satisfied the second prong of Rule 20(a)(2). *See, e.g.*, *Turner*, 2009 WL 34000987, at *4.

Although each Doe Defendant may later present different factual and substantive legal defenses, that does not defeat, at *this stage of the proceedings*, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B).

(c)    Joinder will not result in prejudice to any parties or cause undue delay.

The Court must assess whether joinder would prejudice the parties or result in needless delay. At this stage of the litigation, joinder in a single case of the Doe Defendants who infringed

the same copyrighted material promotes judicial efficiency and is beneficial to both Plaintiff and the Doe Defendants. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

At this stage of the litigation the Doe Defendants have been identified solely by IP addresses. In the experience of Plaintiff's counsel, it is almost certain that certain Doe Defendants will be associated with multiple IP addresses. Severance of a Doe Defendant associated with multiple IP addresses would subject the Doe Defendant to multiple suits for difference instances of allegedly infringing activity and, thus, would not be in the interests of the Doe Defendants. In addition, the Doe Defendants will be forced to pay higher costs to defend their lawsuit as individuals versus in a collective action. Doe Defendants in this case would likely much rather be one of many being sued for their wrongdoings, as opposed to one-on-one with Plaintiff's attorneys.

Prejudice to Plaintiff is obvious in this matter – Plaintiff will be forced to file one-hundred and eighty-eight separate lawsuits if the Court severs the current suit. Though this does not, in and of itself, justify joinder, it is a factor weighing in favor of not severing the case *sua sponte*. Delay and judicial economy appear to go hand-in-hand. If this action is severed, it will turn into a large number of individual cases for Northern District, cases that will be hard to manage.

While understandably not decisive on their own, these factors favor allowing Plaintiff to proceed with this matter as a single suit.

(d)    Plaintiff's pleadings differ materially from the pleadings in previously severed copyright infringement cases.

Any case over the past fifteen-plus years that involved a joinder issue whereby the plaintiff identified doe defendants through Grokster, Kazaa, Limewire, Gnutella, and/or eDonkey is entirely distinguishable.  Such cases have no bearing on this one.[1]  The fundamental differences in the ways these protocols operate create fundamentally different legal consequences for its users, specifically issues effecting joinder. FastTrack never had swarms that required the cooperation and concerted action of many sophisticated users.  It only had individuals clicking a download button on their computers.  As such, some argument can be made in favor of severance of the FastTrack cases. Plaintiff's case, for the reasons described above, does not suffer from the same issues.  The pleading and nature of the infringement software make this a fundamentally different case.

In fact, the referenced cases only make Plaintiff's joinder argument stronger.  The judges in these cases point out that plaintiffs failed to adequately plead any interconnectivity.  For example, in *IO Group v. Does 1-435*, Judge Illston points out:

> Looking closely at the factual allegations regarding the Doe defendants here, it becomes clear there is no basis to find the defendants were involved in the same transaction or series of transactions. Doe 1 is the only defendant alleged to have "distributed" plaintiff's work "Breakers." Proposed FAC, ¶22. There is no allegation that any other Doe defendant distributed, viewed or downloaded "Breakers." The vast majority of Does are alleged to have "distributed" different movies, on different days, at different times. Most of the Doe defendants are alleged to have distributed one of plaintiff's titles, but one is alleged to have distributed two titles. Id., ¶ 32. While there are a few instances where different Doe defendants distributed the same titles, those distributions took place at different times and there are no allegations that those defendants distributed the film to each other or had any connection to each other. 2011 WL 445043 at *4.

---

[1] These cases are raised for the Court to contrast their circumstances to Plaintiff's.  *See, e.g. BMG Music v. Does 1-4*, Case No. 06-1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. 2006) (The Honorable Judge Patel severed an action with no conspiracy allegations and infringers used classic FastTrack technology (*see* Case No. 06-1579, DKT#6); *IO Group v. Does 1-435,* Case No. 10-4382, 2011 WL 445043 (N.D. Cal. Feb. 3, 2011) (The Honorable Judge Illston severed the doe defendants in a situation where doe defendants were using eDonkey, a protocol similar to FastTrack, to upload and download copyrighted files, and the plaintiff failed to "appropriately allege[]" conspiracy); *Laface Records, LLC v. Does 1-38*, 2008 U.S. Dist. LEXIS 14544 (E.D.N.C. Feb. 27, 2008) (ordering severance where doe defendants were alleged to have participated in a FastTrack P2P); *Interscope Records v. Does 1–25*, 2004 U.S. Dist. Lexis 27782 (M.D. Fla. Apr. 1, 2004) (same); *Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-4862 (N.D. Cal. Nov. 16, 2004) (The Honorable Judge Alsup severs twelve doe defendants where plaintiff failed to allege that does acted in concert).

1   Plaintiff's Complaint has no such issues. There is no similarity between Plaintiff's facts, pleadings,

2   and technology, and its counterpart in *IO Group,* or the other case listed in the above footnote.

3             (e)    Courts readily approve joinder in copyright infringement cases.

4             In an opinion of the United States District Court for the District of Maine, the Court found

5   joinder appropriate in a case with even less connectivity than what was pled in this case. *Arista*

6   *Records, LLC v. Does 1-27,* 527 F. Supp. 2d 240 (D. Me. 2008).

7             In *Arista,* a group of copyright owners and licensees brought a copyright infringement action

8   against 27 unidentified students at the University of Maine. *See* 527 F. Supp. 2d at 241. In relation

9   to a number of motions to dismiss filed by various doe defendants, the magistrate judge suggested

10  that the court enter an order to show cause why the plaintiffs should not be sanctioned pursuant to

11  Rule 11, recommending that the plaintiffs demonstrate that they have adequate evidentiary support

12  for their factual contentions regarding joinder. *Id.* at 250-251.

13            The district court did not act on the recommendation, did not issue the show cause order, but

14  did address the joinder issue in the context of the motions to dismiss. *See id.* at 251. The court stated

15  that it was not troubled with the joinder of the multiple doe defendants in one lawsuit. *Id.* The court

16  based its conclusion upon consideration of the plaintiffs' allegations regarding whether they had

17  asserted that their right to relief related to or arose out of the same transaction or occurrence. The

18  court noted that:

19  
20            [T]he Complaint alleges the Doe Defendants (1) engaged in copyright infringement on
              the internet; (2) uploaded and downloaded copyrighted sound recordings using peer-to-
21            peer networks; and (3) accessed the peer-to-peer network though a common ISP--the
              same University. The Plaintiffs further assert that twenty-five of the twenty-seven Doe
22            Defendants used the same peer-to-peer network and many infringed the same
              copyrighted sound recording or different copyrighted sound recordings from the same
23            artist. Finally, they allege that the Doe Defendants have been "active participants in
              what can only be described as an online music swap meet, unlawfully copying
24            copyrighted works from other users and distributing such works to other users."
              *Id.* (internal citations omitted).
25  
26  
27  The court then stated that "[a]t the very least, it seems premature to make a final determination that

28

joinder is not permissible under Rule 20." *Id.* As a practical matter, the court noted that, because the court cannot dismiss a case for misjoinder pursuant to Rule 21, the "remedy, then, would be to break up this one lawsuit into individual causes of action, an alternative that does not exactly resonate with practicality." *Id*. at 251. Further, the court went on to state:

> Regarding the magistrate judge's concern about the possibility of abuse of the litigation process by the Plaintiffs, the Court is again more sanguine. It is true, as the magistrate judge observes, that the Plaintiffs have not identified and served the Doe Defendants and that they seek their names through this lawsuit. It is also possible that once identified and served, the Doe Defendants will determine that it is in their best interests to resolve the case. But, the Court begins with the premise that the *Plaintiffs have a statutorily protected interest in their copyrighted material* and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. *Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interests*. *Id*. at 252 (emphasis added).

Overall, the District Court of Maine addressed not only Rule 20, but also the same practical arguments presented here. In light of Plaintiff's allegations, it is too premature to definitively state that the Doe Defendants have been improperly joined in one lawsuit. To hold otherwise would practically prevent copyright holder plaintiffs from being able to protect their material and/or would unnecessarily burden the courts with additional cases.

Additionally, numerous other courts in similar cases, including this District, have declined to find misjoinder.[2] Overall, there have been many Court orders in the Northern District of California and around the nation that have apparently approved of joinder in similar cases, and supported positions such as Plaintiff's in granting similar applications. Indeed, the most thorough examination of joinder in the BitTorrent protocol context was seen in a recent ruling from the United States District Court for the District of Columbia. *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 1:10-

---

[2] See, e.g., *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008) (Kollar-Kotelly, C.) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, … the Court also finds that this inquiry is *premature* with first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct") (emphasis added); *Arista Records LLC v. Does 1-16*, Case. No. 08-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).

cv-00455, Memorandum Opinion, Doc. No. 40 (D.D.C. Mar. 22, 2011) (Howell, J.). In deciding on the issue of joinder in that case, Judge Howell rejected misjoinder arguments brought by certain *amici* and an Internet Service Provider. This 42-page opinion is perhaps the most comprehensive and robust examination to date of the issues surrounding joinder in BitTorrent protocol copyright infringement context.

## VII. CONCLUSION

Plaintiff applies for leave to, upon Court authorization, immediately serve FRCP 45 subpoenas to compel listed ISPs in Complaint (DKT#1), or a further discovered relevant subsidiary, to within fifteen (30) days turnover personal identification information it currently possesses, and may identify in the future during the course of this litigation, for each IP address linked to each individual Doe Defendant described in Attachment A to the Complaint (DKT#1 at 13), including each Doe Defendant's:

- True Name;

- Address;

- Telephone Number;

- E-mail Address; and

- Media Access Control Address.

Plaintiff will only use this information to prosecute the claims made in its Complaint. Further, Plaintiff understands that the subpoenaed ISPs will be able to notify their subscribers that this information is being sought, and each Doe Defendant will have the opportunity to raise any objections before this Court prior to the return date of the subpoena. Thus, to the extent that any Defendant wishes to object, he or she may do so.

All factors discussed weigh heavily in favor of compelling disclosure of the Doe Defendants' identifying information. Without disclosure of the Doe Defendants' identities, Plaintiff's litigation cannot proceed. To deny this motion would be to give those committing this online, peer-to-peer

piracy *carte blanche* to repeat their infringing conduct. Permitting these acts would essentially render the federal copyright laws inapplicable to illegal Internet interconnected "sharing." Plaintiff prays that the Court recognize this, and grant this Application by entering the later filed proposed order, or the Court's own order.

Respectfully Submitted,

STEELE HANSMEIER, PLLC,

**DATED: May 9, 2011**

By: _____/s/ Brett L. Gibbs, Esq._____

Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*