1  Aaron K. McClellan - 197185
   amcclellan@mpbf.com
2  Steven W. Yuen - 230768
   syuen@mpbf.com
3  MURPHY, PEARSON, BRADLEY & FEENEY
   88 Kearny Street, 10th Floor
4  San Francisco, CA  94108-5530
   Tel:    (415) 788-1900
5  Fax:    (415) 393-8087

6  Attorneys for Plaintiff
   LIUXIA WONG

7

8

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12 LIUXIA WONG,                          Case No.:  5:12-cv-00469-HRL

13        Plaintiff,                     **PLAINTIFF'S FIRST AMENDED
                                         COMPLAINT**
14 v.
                                         DEMAND FOR JURY TRIAL
15 HARD DRIVE PRODUCTIONS, INC., AND
   DOES 1-50,
16
17        Defendants.

18              **I.    INTRODUCTION**

19        1.      This is a civil action seeking declaratory relief based upon the continuing improper

20 conduct of defendants Hard Drive Productions, Inc. (hereafter "Hard Drive") and Does 1-50, in

21 harassing plaintiff and others like her to settle claims of purported infringement of Hard Drive's

22 purported copyrighted works.

23              **II.    PARTIES**

24        2.      Plaintiff Liuxia Wong is an individual over the age of 18 residing in the County of

25 Solano, California.

26        3.      Plaintiff is informed and believes, and thereon alleges that Hard Drive is an Arizona

27 Corporation whose principal place of residence is in Maricopa County, and which does business

28 worldwide including in the State of California, Counties of San Francisco and Solano.

---

4.     The true names and capacities of defendants named as Does 1 through 50 are presently unknown to plaintiff.

5.     Plaintiff will amend this complaint setting forth the true names and capacities of these fictitious defendants when they are ascertained.

6.     Plaintiff is informed and believes, and thereon alleges that each of the fictitious defendants have participated in the acts alleged in this complaint to have been done by the named defendant.

7.     Plaintiff is informed and believes, and thereon alleges that, at all relevant times, each defendant, whether named or fictitious, was the alter ego, agent, and/or employee of each of the other defendant, and in doing the things alleged to have been done in the complaint, acted within the scope of such agency and/or employment, and/or ratified the acts of the other.

### III.     JURISDICTION

8.     This action arises under the copyright laws of the United States, 17 U.S.C. sections 101 et seq.

9.     The court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. sections 1331 and 1338, and the Declaratory Judgment Act codified at 28 U.S.C. sections 2201 and 2202.

10.     This court has personal jurisdiction over Hard Drive because it has submitted itself to the jurisdiction of this court by filing an action on November 28, 2011, case number 4:11-cv-05630-RS, and which is related to this action.

11.     Due to Hard Drive's filing of prior action number 3:11-cv-01957-JCS and its present action number 4:11-cv-05630-RS, and its conduct, it has created an actual and continuing controversy within the court's jurisdiction such that the court needs to declare the rights and other legal relations of plaintiff who is seeking such declarations from the court.

### IV.     VENUE

12.     Venue is proper in the Eastern District of California pursuant to 28 U.S.C. section 1400(a) as Hard Drive has claimed that plaintiff infringed its purported copyrighted work by downloading such works where she resides.

///

13.     Venue is also proper in the Northern District of California as Hard Drive has consented to the venue of this court by filing action number 4:11-cv-05630-RS in this district and by its conduct which has created an actual and continuing controversy such that the court needs to declare the rights and other legal relations of plaintiff who is seeking such declarations from the court, and which is related to this action.

## V.     **INTRADISTRICT ASSIGNMENT**

14.     Assignment of this action to the San Francisco Division is proper as Hard Drive's present action number of 4:11-cv-05630-RS is assigned to the Honorable Richard Seeborg in the San Francisco Division.

15.     Assignment of this action to the San Francisco Division is also proper as Hard Drive's prior filed action number of 3:11-cv-01957-JCS was assigned to the Honorable Joseph C. Spero in the San Francisco Division.

16.     This action and action number 4:11-cv-05630-RS should be assigned to the Honorable Joseph C. Spero in the San Francisco Division per the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California (hereafter "Civil L.R.") 3-3(c) and 3-12.

## VI.     **FACTUAL ALLEGATIONS**

### A.     **Hard Drive's Prior Lawsuit**

17.     On April 22, 2011, Hard Drive filed a complaint for copyright infringement which was assigned case number 3:11-cv-01957-JCS (hereafter "prior action").

18.     Based on Hard Drive's consent to proceed before a U.S. Magistrate Judge, the prior action was assigned to the Honorable Joseph C. Spero.

19.     In this prior action, Hard Drive failed to comply with Civil L.R. 3-16(b)(1) by failing to disclose "any persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to have either: (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding."

///

20.     Instead on April 22, 2011, Hard Drive violated Civil L.R. 3.16(b) by purposefully limiting and qualifying its disclosure to only state that Hard Drive does not have a parent corporation that owns 10% or more of its stock, and that there are no known persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities that may have a personal or affiliated financial interest in the subject matter or controversy.

21.     Plaintiff is informed and believes, and thereon alleges that Hard Drive reported in its 2011 annual report received on or about January 28, 2011 by the Arizona Secretary of State that Paul Pilcher owns more than 20% of any class of shares issued by Hard Drive, or having more than a 20% beneficial interest in Hard Drive, information which is publicly available electronically from the Arizona Secretary of State at http://starpas.azcc.gov/scripts/cgiip.exe/WService=wsbroker1/names-detail.p?name-id=11235797&type=CORPORATION.

22.     In this prior action, Hard Drive sued 48 anonymous doe defendants by improperly joining them in one action without taking into account the requirements of 28 U.S.C. section 1400(a) which provides that a defendant in a copyright infringement action may only be sued in the district where the defendant or his or her agent resides or may be found.

23.     Plaintiff is informed and believes, and thereon alleges that Hard Drive improperly joined multiple defendants in one action to avoid paying the $350 filing fee for each action had Hard Drive properly filed separate actions for each defendant.

24.     Plaintiff is informed and believes, and thereon alleges that Hard Drive improperly joined multiple defendants in one action to avoid having any cases dismissed due to failure to prosecute by failing to pay the $350 filing fee for each separate defendant.

25.     Hard Drive is improperly receiving the benefits and services of the court without paying the requisite filing fee of $350 for each separate action against each defendant.

26.     Hard Drive alleged copyright infringement associated with plaintiff's Internet Protocol (IP) Address occurred on March 28, 2011 which is more than three months after the work was first published on March 3, 2010, and which is before the work's registration date of April 22, 2011.

///

///

27.     In this prior action, Hard Drive alleged that it owned the purported copyright to an adult video entitled "Amateur Allure Jen" (hereafter "work") which is purportedly registered with the United States Copyright Office.

28.     Plaintiff is informed and believes, and thereon alleges that Hard Drive represented to the U.S. Copyright Office that the work was first published on March 3, 2010.

29.     Plaintiff is informed and believes, and thereon alleges that the work was registered on April 22, 2011.

30.     In this prior action, Hard Drive alleged that it was entitled to recover statutory damages and attorneys' fees per 17 U.S.C. section 504(c) as stated in its complaint at paragraph 31, and in its prayer for relief at paragraph 4.

31.     A party is not entitled to recover statutory damages and attorneys' fees under 17 U.S.C. section 504(c) if the alleged infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work per 17 U.S.C. section 412.

32.     Hard Drive is not entitled to recover statutory damages and attorneys' fees.

33.     After filing its prior action, Hard Drive then applied ex parte for expedited discovery seeking the names, addresses, and telephone numbers of the account holders whose IP addresses resolved to them.

34.     Plaintiff is informed and believes, and thereon alleges that Hard Drive had entered into an agreement with a third party private investigator, who is unlicensed under California law, to log IP addresses that were allegedly transmitting Hard Drive's work via Bittorrent.

35.     A Bittorrent tracker is a computer server.

36.     A Bittorrent tracker is required to initiate any download of the work.

37.     Plaintiff is informed and believes, and thereon alleges that Hard Drive gave the right to distribute the work to its unlicensed private investigator, otherwise it would not have been able to log the IP addresses.

38.     Plaintiff is informed and believes, and thereon alleges that Hard Drive knew of the IP addresses of the Bittorrent trackers that were being used distribute the work.

39.     Plaintiff is informed and believes, and thereon alleges that Hard Drive never issued any Digital Millennium Copyright Act (D.M.C.A.) takedown notices to the owners and/or operators of the Bittorrent trackers that were being used distribute the work.

40.     Plaintiff is informed and believes, and thereon alleges that Hard Drive never issued any D.M.C.A. takedown notices to the owners and/or operators of the Bittorrent trackers, because it and/or its agents were using them as honeypots so that they could continue to log IP address.

41.     Plaintiff is informed and believes, and thereon alleges that Hard Drive knew it could make more money by allowing its work to continue to be distributed instead of shutting down the Bittorrent trackers.

42.     Contrary to Hard Drive's allegation that venue under 28 U.S.C. section 1391(b) governs copyright infringement actions, it does not; only section 1400(a) governs venue in copyright infringement actions per the Supreme Court's holding in Schnell v. Peter Eckrich & Sons, Inc. (1961) 365 U.S. 260, 262-263.

43.     The Schnell court's analysis of venue in section 1400(b) for patent infringement actions should likewise be applied for venue in copyright infringement actions under section 1400(a).

44.     Plaintiff did not move to quash Hard Drive's subpoena issued to her internet service provider.

45.     Plaintiff's internet service provider released her name, address, and telephone number to Hard Drive.

46.     After receipt of plaintiff's name, address, and telephone number, Hard Drive transmitted a letter demanding that she settle the prior action for $3,400.  A true and correct copy of this letter is attached hereto as Exhibit A.

47.     In Hard Drive's settlement demand letter, it notified plaintiff that it was prepared to commence a lawsuit against her if its settlement efforts failed.

48.     In Hard Drive's settlement demand letter, it notified plaintiff to act promptly by settling to avoid being named as a defendant in the lawsuit.

///

///

49.     In Hard Drive's settlement demand letter, it notified plaintiff that she was liable for copyright infringement by merely having an unsecured wireless network/router even though plaintiff did not download the work, did not tell anyone else to download the work, and did not know anyone was using her internet service to download the work.

50.     In Hard Drive's settlement demand letter, it notified plaintiff that she may be liable for statutory damages of up to $150,000.

51.     Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior action complaint coupled with the settlement demand letter was designed to intimidate and to coerce plaintiff into paying the settlement demand of $3,400, especially when confronted with the statutory damages figure of $150,000, and when she was not represented by counsel.

52.     Plaintiff is informed and believes, and thereon alleges that Hard Drive's prior action complaint coupled with the settlement demand letter was designed to intimidate and to coerce plaintiff into paying the settlement demand of $3,400 as it would be more expensive for her to retain an attorney to defend her against all allegations.

53.     Plaintiff is informed and believes, and thereon alleges that no facts existed for Hard Drive to represent, either in its prior action complaint or in its settlement demand letter, to plaintiff that Hard Drive was entitled to recover any statutory damages award given that the alleged infringement occurred on March 28, 2011 which is more than three months after the work was first published on March 3, 2010, and which is before the work's registration date of April 22, 2011.

54.     Plaintiff is informed and believes, and thereon alleges that Hard Drive's communications transmitted to plaintiff were designed to intimidate and to coerce her into settling the case despite the absence of any facts supporting liability against her.

55.     Plaintiff is informed and believes, and thereon alleges that Hard Drive, its agents and/or its employees also contacted her telephonically in order to extract a settlement from her based on their acts of coercion and intimidation.

56.     Hard Drive subsequently obtained a continuance of the case management conference in the prior action.

///

57.     On or before September 27, 2011, plaintiff notified Hard Drive that she denied all liability alleged in the prior action's complaint.

58.     In response to plaintiff's notification described in paragraph 57, Hard Drive notified plaintiff that they would name and serve her with a lawsuit.

59.     On September 27, 2011, Hard Drive subsequently dismissed its prior action without prejudice.

60.     Plaintiff is informed and believes that Hard Drive dismissed its prior action as it could not, and did not want to address the issues and questions that the court had with the prior action, and that it also did not want to be sanctioned for failing to prosecute the case, and for misjoining all anonymous doe defendants.

61.     On or about October 10, 2011, plaintiff notified Hard Drive that she denied all liability alleged in the prior action's complaint.

62.     On or about October 10, 2011, plaintiff notified Hard Drive that if it dismissed plaintiff with prejudice, she would agree that each party would bear their own costs and attorneys' fees.  Hard Drive did not accept this offer.

### B.     Hard Drive's Present Lawsuit

63.     On November 21, 2011, Hard Drive filed a complaint for copyright infringement against a single John Doe defendant which was initially assigned case number 4:11-cv-05630-YGR (hereafter "present action"), and which was subsequently reassigned to the Honorable Richard Seeborg on November 30, 2011.

64.     Despite the fact that Hard Drive knew that the present action was related the dismissed prior action, Hard Drive failed to comply with Civil L.R. 3-3(c) which requires the refiling party to file a motion to consider whether cases should be related pursuant to Civil L.R. 3-12 so that the judge originally assigned to the action which had been dismissed should have the refiled case transferred to him or to her to avoid the unduly burdensome duplication of labor and expense.

///

///

///

65.     Plaintiff is informed and believes, and thereon alleges that Hard Drive purposefully failed to comply with Civil L.R. 3-3(c), because the previously assigned judge, the Honorable Joseph C. Spero, had made certain rulings adverse to Hard Drive and to Hard Drive's counsel in other improperly joined copyright infringement cases.

66.     Hard Drive further misrepresented to the court that plaintiff resided in this district although at all relevant times, it knew that plaintiff resided in the City of Fairfield, County of Solano which falls under the venue of the Eastern District of California.  See attached Exhibit A.

67.     In the present action, Hard Drive alleged that it was entitled to recover statutory damages and attorneys' fees per 17 U.S.C. section 504(c) as stated in its complaint at paragraph 31, and in its prayer for relief at paragraph 2.

68.     Again, Hard Drive was not entitled to recover statutory damages and attorneys' fees, because Hard Drive claimed that the alleged infringement occurred on March 28, 2011 which is more than three months after the work was first published on March 3, 2010, and which is before the work's registration date of April 22, 2011.

69.     Plaintiff is informed and believes, and thereon alleges that Hard Drive's present action complaint coupled with the settlement demand letter was designed to intimidate and to coerce plaintiff into paying the settlement demand of $3,400 especially when confronted with a statutory damages figure of $150,000.

70.     On January 9, 2012, Hard Drive applied ex parte to take the deposition of plaintiff who was not named as a defendant in Hard Drive's present action.

71.     Plaintiff is informed and believes, and thereon alleges that despite Hard Drive's erroneous position that plaintiff is vicariously liable for any acts or conduct occurring through her internet account, it purposely avoided naming plaintiff for the purposes of obtaining ex parte discovery in the present action on an expedited basis, and to cause plaintiff to incur attorneys' fees in defending herself at deposition to force her to settle.

///

///

///

72.     Hard Drive's tactics were improper as plaintiff had offered it at all relevant times that she was prepared to execute a declaration under penalty of perjury that: (1) she did not download the movie, and (2) she did not tell anyone else to download the movie for her, and (3) she did not know anyone else was using her computer or network equipment to download the movie.

73.     Hard Drive rejected plaintiff's offered declaration as stated in paragraph 72.

74.     Hard Drive then improperly demanded $3,000 from plaintiff in exchange for not proceeding with her deposition despite plaintiff's offer of a declaration as stated in paragraph 72. A true and correct copy of this settlement demand is attached hereto as Exhibit D.

75.     Plaintiff then offered to execute a declaration under penalty of perjury that: (1) she does not know who downloaded the movie, and (2) that her internet service provider set up her wi-fi equipment.

76.     Hard Drive again rejected plaintiff's offered declaration, as stated in paragraph 75.

77.     At all relevant times, Hard Drive notified plaintiff that it would proceed with her deposition unless she offered $3,000 in settlement.

78.     Plaintiff is informed and believes, and thereon alleges that Hard Drive knew that plaintiff would incur substantial costs and attorneys' fees if her deposition were to proceed, and used this information to extract a settlement from plaintiff.

79.     Plaintiff is informed and believes, and thereon alleges that the acts and conduct of Hard Drive and its agents or employees as described herein was unlawful and/or improper.

### C.     Hard Drive's Work is Not Copyrightable

80.     Article I, Section 8, Clause 8 of the United States Constitution, known as the Copyright Clause, empowers the United States Congress: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

81.     Thus, copyright is authorized only for works which promote the progress of science and the useful arts.

///

///

PLAINTIFF'S FIRST AMENDED COMPLAINT
5:12-cv-00469-HRL – PAGE 10

82.     Horizontal Stare Decisis or Circuit law binds all courts within a particular circuit, including the court of appeals itself.  (<u>Hart v. Massanari</u> (9th Cir. 2001) 266 F.3d 1155, 1171—"[T]he first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals….  Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court" or "unless Congress changes the law.")

83.     Early Circuit law in California held that obscene works did not promote the progress of science and the useful arts, and thus cannot be protected by copyright.

84.     Subsequent non-en banc decisions by the Ninth Circuit failed to follow this prior circuit decision in California.

85.     Given the absence of any subsequent en-banc Ninth Circuit decisions, Supreme Court precedent, or changes in the Constitution that copyright is authorized for works which does not promote the progress of science and the useful arts, the subsequent Ninth Circuit decisions are void and do not constitute binding precedent.

86.     Hard Drive's work does not promote the progress of science.

87.     Hard Drive's work does not promote the useful arts.

88.     Hard Drive has judicially admitted that its work is adult pornography.

89.     Hard Drive's work depicts obscene material.

90.     Plaintiff is informed and believes, and thereon alleges that to create the work, Hard Drive and its agents and/or its employees violated laws which prohibited pimping, pandering, solicitation and prostitution, including any claims of conspiracy.

91.     Hard Drive's work depicts criminal acts and/or conduct.

92.     Hard Drive's work is not copyrightable.

**VII.     FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF AND/OR JUDGMENT THAT PLAINTIFF IS NOT LIABLE TO HARD DRIVE FOR COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS**

93.     Plaintiff realleges and incorporates by reference as though fully stated here, paragraphs 1 to 92.

///

94.     Although Hard Drive in its public present action denies that it does not know if plaintiff is liable to it for copyright infringement, in nonpublic communications, Hard Drive's position is completely the opposite—that plaintiff is liable to Hard Drive.

95.     On July 13, 2011, Hard Drive, through its counsel transmitted a letter to plaintiff which is attached hereto as Exhibit A.

96.     In its letter, Hard Drive demanded $3,400 from plaintiff to avoid being named as a defendant in Hard Drive's prior lawsuit for copyright infringement.  (Exhibit A at p.3.)

97.     Plaintiff is informed and believes, and thereon alleges that along with the settlement demand letters Hard Drive and/or its counsel have transmitted, they also included a "memorandum of law" authored by its then counsel John Steele of Steele | Hansmeier, PLLC whose firm name has since changed to Prenda Law Inc.  A true and correct copy of the "memorandum of law" is attached hereto as Exhibit B and a true and correct copy of the metadata for the "memorandum of law" is attached hereto as Exhibit C.

98.     In Hard Drive's counsel's "memorandum of law," it is their ultimate position that the account holder is liable for copyright infringement committed by any person who uses the account holder's internet access.

99.     On January 18, 2012, Hard Drive improperly demanded a settlement of $3,000 in exchange for dismissing the present case against the John Doe defendant to avoid plaintiff having her deposition taken.  See Exhibit D.

100.     Hard Drive's present action, in which it allegedly denies that it does not know who infringed its work is false and mere pretext given its nonpublic actions and conduct as alleged herein.

101.     Plaintiff is informed and believes, and thereon alleges that Hard Drive is purposefully avoiding naming plaintiff so that it can improperly conduct expedited ex parte discovery upon plaintiff.

102.     Plaintiff is informed and believes, and thereon alleges that Hard Drive is purposefully conducting expedited ex parte discovery upon plaintiff in order to intimidate and to coerce plaintiff into settling with Hard Drive.

103.     As alleged in Hard Drive's present action, and based upon its actions and conduct as described herein, plaintiff denies that she is liable to Hard Drive for copyright infringement.

104.    Based on all the information stated herein, an actual and continuing controversy exists between plaintiff and Hard Drive such that plaintiff needs the court to declare the rights between the parties.

105.    Wherefore, plaintiff prays for the following relief.

## VIII.   PRAYER FOR RELIEF

Plaintiff seeks relief as follows:

106.    That the court issue an order declaring that plaintiff is not liable to Hard Drive for copyright infringement, and/or has not infringed Hard Drive's copyrights, if any;

107.    That the court issue an order declaring that Hard Drive's work is not copyrightable and/or to strike its copyright registration as the work does not promote the progress of science and the useful arts as required by the U.S. Constitution, including but not limited to the fact that the work is obscene, was created by unlawful conduct, and depicts unlawful activity, and that Hard Drive, its owners, agents, and/or employees have engaged in unlawful activity and/or conduct such as pimping, pandering, solicitation, and prostitution, including conspiracy to commit such acts.

108.    That the court issue an order declaring that Hard Drive has not mitigated damages, including but not limited to being based upon the doctrines of estoppel and laches, and due to its failure to issue Digital Millennium Copyright Act (D.M.C.A.) take down notices to the Bittorrent trackers, and or by continuing to allow

109.    That the court issue an order declaring that Hard Drive is not entitled to recover statutory damages and attorneys' fees;

110.    That the court issue an order declaring that no infringement has occurred given that Hard Drive had authorized its work to be distributed by its non-California unlicensed private investigators, who are in violation of California Business and Professions Code sections 7520 and 7521, while they were distributing and participating in the distribution of the work, and/or that Hard Drive is guilty of unclean hands due to its and/or its agents' operation and use of honeypots, and/or the use of a third-party's services as honeypots;

///

///

111.    That the court issue an order declaring that Hard Drive, its agents, and/or employees have unlawfully and improperly demanded settlements not supported by facts and law which constitute copyright misuse;

112.    That plaintiff be awarded her costs and attorneys' fees as provided by law, including but not limited to U.S.C. section 505;

113.    That the court enter judgment in favor of plaintiff, and against Hard Drive and any other named defendants; and

114.    For such other and further relief as the court deems just and proper.

## IX.    DEMAND FOR JURY TRIAL

115.    Plaintiff demands a jury trial for all issues triable by jury.

DATED: January 31, 2012

MURPHY, PEARSON, BRADLEY & FEENEY

/s/ Steven W. Yuen

By _____
Steven W. Yuen
Attorneys for Plaintiff
LIUXIA WONG

SWY.20356758.doc

# Steele | Hansmeier, PLLC
*A leading anti-piracy law firm*

July 13, 2011

**VIA U.S. MAIL**
Liuxia Wong
1180 Mahogany CT
Fairfield, CA 94553

      *Re:*    *Hard Drive Productions v. Does 1-48*
              *Case No. 3:11-cv-01957-JCS, Ref #5702*

Dear Ms. Wong:

Steele | Hansmeier, PLLC has been retained by Hard Drive Productions Inc. to pursue legal action against people who illegally downloaded their copyrighted content (i.e., "digital pirates"). Digital piracy is a very serious problem for adult content producers, such as our client, who depend on revenues to sustain their businesses and pay their employees.

On March 28, 2011 at 12:33:00 PM (UTC), our agents observed the IP address with which you are associated illegally downloading and sharing with others via the BitTorrent protocol the following copyrighted file(s):

      **Amateur Allure - Jen**

      *The ISP you were connected to: Comcast Cable*

      *Your IP Address you were assigned during your illegal activity: 76.126.48.155*

We have received a subpoena return from your ISP confirming that you are indeed the person that was associated with the IP address that was performing the illegal downloading of our client's content listed above on the exact date(s) listed above.

On April 22, 2011 we filed a lawsuit in United States Federal Court in the Northern District of California against several anonymous digital pirates (Case No. 3:11-cv-01957-JCS). Under the Federal Rules of Civil Procedure, our lawsuit against you personally will not commence until we serve you with a Complaint, which we are prepared to do if our settlement efforts fail. While it is too late to undo the illegal file sharing associated with your IP address, we have prepared an offer to enable our client to recover damages for the harm caused by the illegal downloading and to allow both parties to avoid the expense of a lawsuit.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

Fax: 312.893.5677   |   161 N. Clark St. 4700, Chicago, IL 60601   |   Tel: 312.880.9160
www.wefightpiracy.com

# Exhibit A

Enclosed, please find a Frequently Asked Questions sheet, a payment authorization form and a sample of the Release that you will receive. We look forward to resolving our client's claim against you in an amicable fashion, through settlement.

Sincerely,

John L. Steele
Attorney and Counselor at Law

Enclosures

Under the Copyright Law of the United States, copyright owners may recover up to $150,000 in statutory damages (in cases where statutory damages are applicable, which may or may not be the case here) per infringing file plus attorney's fees in cases, whereas here, infringement was willful. In it least one case where the Copyright Law has been applied to digital piracy and statutory damages were applicable, juries have awarded over $20,000 per pirated file. During the RIAA's well-publicized campaign against digital music piracy, over 30,000 people nationwide settled their cases for amounts ranging from an average of $3,000 to $12,000. More recently, on December 22, 2010, a case in which a defendant was accused of illegally downloading 6 works via BitTorrent, a settlement was reached for $250,000.

In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith.

In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is authorized to accept the sum of **$3,400.00** as full settlement for the claims. This offer will expire on **July 27, 2011 at 4:00 p.m. CST**. If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation.

To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by:

    (a)    Mailing a check or money order payable to "Steele Hansmeier Trust Account" to Steele | Hansmeier, PLLC, 161 N Clark Street #4700, Chicago, Illinois 60601; or

    (b)    Completing and mailing/faxing the payment authorization to Steele | Hansmeier, PLLC, 161 N Clark Street #4700, Chicago, Illinois 60601, Facsimile: (312) 893-5677.

Be sure to reference your case number and your "Ref#" on your method of payment. Regardless of your payment method, once we have processed the settlement, we will mail you your signed Release as confirmation that your payment has been processed and that you have been released from the lawsuit.

Please consider this letter to constitute formal notice that until and unless we are able to settle our client's claim against you, we demand that you not delete any files from your computer or any other computers under your control or in your possession. If forced to proceed against you in a lawsuit, we will have a computer forensic expert inspect these computers in an effort to locate the subject content and to determine if you have deleted any content. If in the course of litigation the forensic computer evidence suggests that you deleted media files, our client will amend its complaint to add a "spoliation of evidence" claim against you. Be advised that if we prevail on this additional claim, the court could award monetary sanctions, evidentiary sanctions and reasonable attorneys' fees. If you are unfamiliar with the nature of this claim in this context, please consult an attorney.

<u>We strongly encourage you to consult with an attorney to review your rights in connection with this matter</u>. Although we have endeavored to provide you with accurate information, our interests are directly adverse to yours and you should not rely on the information provided in this letter for assessing your position in this case. Only an attorney who represents you can be relied upon for a comprehensive analysis of our client's claim against you.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

# Steele | Hansmeier, PLLC

*An anti-piracy law firm*

## FREQUENTLY ASKED QUESTIONS

**Q:**     **Why did I receive this letter?**

**A:**     You received this letter because copyright infringement involving your Internet account was detected by our agents.

**Q:**     **What are the benefits of settling?**

**A:**     The benefits of settling include avoiding the time and expense of litigation and associated risks.

**Q:**     **Will I remain anonymous if I settle?**

**A:**     Yes, you will remain anonymous if you settle.

**Q:**     **Has my privacy been violated?**

**A:**     No. A copyright infringement was detected over the public Internet or a Peer-to-Peer (P2P) Network involving your internet connection.

**Q:**     **I haven't infringed on a copyright, why did I receive a notice?**

**A:**     If you are unfamiliar with the content, we normally find that the infringement was the result of a spouse, child, roommate, employee, or business associate uploading, downloading or otherwise sharing or displaying the copyright protected material over your internet connection. Infringements can also result from an unsecured wireless network. In any of these scenarios the Internet Service Provider (ISP) account holder may be held legally responsible for the infringement(s) and settlement fees.

**Q:**     **What if I have an unsecured wireless network/router?**

**A:**     The Internet Service Provider (ISP) account holder is responsible for securing the connection and may be legally responsible for any infringement(s) that result from an unsecured wireless network/router. This 'defense' has been raised in many criminal matters regarding such crimes as child pornography, and the courts have generally rejected this defense. As far as we are aware, this defense has never been successfully argued, in multiple contexts, including child pornography and civil copyright infringements actions.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

**Q:** What if I own a business and an employee infringed on a copyright?

**A:** The Internet Service Provider (ISP) account holder may be responsible for securing the connection and may be legally responsible for any infringement(s) that occur. We normally find that business owners pass on out-of-pocket costs to the employee that was responsible for the infringement(s).

**Q:** Will this go away if I just remove the file(s) from my computer(s)?

**A:** No. In fact, removing the file(s) associated with your case(s) is a breach of your obligation to preserve electronic evidence.

**Q:** How do I know that the IP Address listed in the notice is mine and not a fake?

**A:** The notice, IP Address, and associated account holder have all been correlated by your Internet Service Provider (ISP) a third party organization that is not associated with us.

**Q:** How do I make this go away?

**A:** Paying the settlement fee will immediately release you from liability and close the case.

**Q:** How do I know that you are legally authorized act on behalf of the copyright owner?

**A:** If you wish to receive additional information proving that we are legally authorized to act on behalf of the copyright owner(s) please contact us.

**Q:** Do I need to hire an attorney?

**A:** The decision to hire an attorney is completely up to you. We cannot give you legal advice, but speaking with an attorney is generally highly advisable. In some cases the settlement offered by us is significantly lower than the costs associated with hiring an attorney.

**Q:** Why are copyright lawsuits normally filed?

**A:** Copyright owners file lawsuits because they have no other way to recover revenues lost to digital piracy.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

# Steele | Hansmeier, PLLC
*An anti-piracy law firm*

## PAYMENT AUTHORIZATION

I hereby authorize Steele | Hansmeier, PLLC to withdraw funds from the bank account or credit card listed below for the settlement amount and legal issue referred to on my Release and herein below.

Case Name and Ref#: _____

### PAYOR INFORMATION

Payor's Name: _____

Billing Address: _____

_____

Telephone Number: _____

Signature: _____  Date: _____

### PAYMENT INFORMATION

Payment amount:  $_____

Name on Bank Account / Credit Card: _____

**If paying via bank account:**

Type of Account:  Checking / Savings

Routing Number: _____ Account Number: _____

**If paying via credit card:**

Card Number: _____ Exp. Date: _____

Card Type:  ☐ Master Card  ☐ Visa ☐ AmEx  ☐ Discover

CID Number: _____ (this is the last three digits on the back of your Master Card, Visa, or Discover Card, or the four digit number in the upper right corner on the front of your AmEx)

Fax or mail this authorization to:

Steele | Hansmeier, PLLC.
161 N. Clark Street, Suite 4700
Chicago, IL 60601

Fax: (312) 893-5677

Fax: 312.893.5677  |  161 N. Clark St. 4700, Chicago, IL 60601  |  Tel: 312.880.9160
www.wefightpiracy.com

# RELEASE

**Company: Hard Drive Productions Inc.**
**IN RE: *Hard Drive Productions v. Does 1-48, Case No. 3:11-cv-01957-JCS***

**Settlement Purposes Only -**
**Inadmissible Under FRE 408**

BE IT KNOWN, that Steele | Hansmeier, PLLC. on behalf of the Company named above, (hereinafter referred to as "Releasor"), for and in consideration of the sum of Three Thousand Four Hundred ($3,400.00) Dollars, and other valuable consideration received from or on behalf of _____, (hereinafter referred to as "Releasee"), provided that Releasee's payment in full in the amount of $3,400.00 is received by Releasor within seven calendar days from the date of this release and such payment is made with no chargebacks, cancellations or revocations, does hereby remise, release, acquit, satisfy, and forever discharge the said Releasee, of and from all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims, and demands regarding the lawsuit referred to as *Hard Drive Productions v. Does 1-48*, **Case No. 3:11-cv-01957-JCS**, or any claim related to any act Releasor alleges that Releasee may or may not have done, which said Releasor ever had, now has, or which any personal representative, successor, heir or assign of said Releasor, hereafter can, shall or may have, against said Releasee, by reason of any matter, cause or thing whatsoever, from the beginning of time to the date of this instrument. In consideration for foregoing release and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Releasee hereby releases Releasor, Steele | Hansmeier, PLLC., Media Copyright Group, LLC., and the owners and operators of the foregoing entities from all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims and demands arising from or relating to the aforementioned lawsuit or any claim related to any act Releasee alleges that Releasor may or may not have done, which said Releasee ever had, now has, or which any heir, successor or assign of Releasee can, shall or may have against Releasor. Releasor and Releasee both agree that the terms of this agreement shall forever remain confidential, and both parties agree that they shall not discuss this agreement. Releasor specifically agrees to not disclose information it may have regarding Releasee, the litigation described herein, or any settlement discussions entered into between the parties unless ordered to do so by a valid court order or by permission of Releasee.

Written and Executed this Wednesday, July 13, 2011.

"RELEASOR"

_____
John L. Steele, Esq.
Representative of Steele | Hansmeier, PLLC.
On behalf of Hard Drive Productions Inc.

**For Public Distribution**

# Memo

**Re:**     An Assessment of the Open Wireless Defense

---

## Introduction

We have been asked to prepare a memorandum on the viability of the Open Wireless Defense in the context of civil copyright infringement claims.

## Background

The Open Wireless Defense is often considered by defense counsel on behalf of clients accused of illegally downloading copyrighted works via a wireless computer network. In short, the Open Wireless Defense is a claim that a third party surreptitiously accessed a defendant's unsecured wireless network and illegally downloaded a plaintiff's copyrighted works.

## Summary

Based on an extensive review of applicable case law and secondary materials, we conclude that the Open Wireless Defense has never been successfully used by a defendant to escape liability for claims of direct or indirect copyright infringement.  First, proving that a given wireless network was unsecured on a past date has proven to be prohibitively difficult, not to mention expose a defendant to liability for spoliation of evidence. Second, the defense has been rejected by the courts in every context in which it has been raised.  Finally, the defense does not trump the "willful blindness" doctrine in the indirect copyright infringement context.

## Discussion

We begin our discussion by describing the logistical difficulty of proving the Open Wireless Defense.  Then, we discuss the treatment the Open Wireless Defense has received in the courts.  Finally, we analyze the "willful blindness" doctrine as it relates to indirect copyright infringement and the Open Wireless Defense.

### Proving the Open Wireless Defense

As its name implies, a key element of the Open Wireless Defense is that a defendant's wireless network lacked an authentication scheme (and was thus accessible by third parties within signal range) on the date that infringing activity was observed on the defendant's network.  According to our technical consultants, it is extremely challenging to prove that a given network was unsecured on a past date – even if a defendant refrained from destroying all applicable network traffic logs.  First, most network traffic logs cannot distinguish between authorized and unauthorized traffic.  Second, even if a log is able to so distinguish, it is often the case that BitTorrent packets are encrypted and thus not subject to

**Exhibit B**

ready analysis. Finally, the cost of decrypting such packets and analyzing network traffic logs in preparation of litigation is often cost prohibitive.

In addition, although the vast majority of wireless routers are capable of logging network traffic, few individuals bother to enable that feature – even after they are notified of impending litigation. **Because of this, the instant such individuals raise the Open Wireless Defense, they invite a spoliation of evidence claim**. Courts have not hesitated to penalize copyright infringement defendants for their failure to retain evidence. *See Arista Records v. Tschirhart,* No. SA-05-CA-372-OG, 241 F.R.D. 462, 466 (W.D. Tex. Aug. 23, 2006). "In this case, defendant's conduct shows such blatant contempt for this Court and a fundamental disregard for the judicial process that her behavior can only be adequately sanctioned with a default judgment. No lesser sanction will adequately punish this behavior and adequately deter its repetition in other cases."

Rather than wade into the morass of the Open Wireless Defense, courts often simply prevent a defendant from raising it. *See Interscope Records v. Leadbetter*, No. 03 CV 4465 (DGT/RML), 2007 WL 1217705, at *8 n.8 (W.D. Wash. 2007); *Capitol Records Inc. v. Thomas-Rasset*, No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *7 (D. Minn. June 11, 2009);

### The Open Wireless Defense in the Courts

The Open Wireless Defense arises most frequently on motions to suppress evidence based on lack of probable cause. For example, in *United States v. Perez*, 484 F.3d 775 (5th Cir. 2007), a woman reported receiving an internet message containing child pornography from an individual with the Yahoo ID, "famcple." The police contacted the FBI, and a subpoena to Yahoo!, Inc. revealed that on the date the child pornography was sent, the transmitting computer used IP address 24.27.21.6. Through a second subpoena to an internet service provider, the FBI determined that the account holder associated with the IP address was Perez. A search warrant was obtained to search Perez's residence, and child pornography was found. Perez objected to the search warrant, arguing that mere association between an IP address and a physical address is insufficient to establish probable cause. He argued that because his wireless network was unsecured, other individuals could have connected to the Internet through his router and, consequently, used his IP address. **The Fifth Circuit flatly rejected Perez's argument, stating that "through it was possible that the transmissions originated outside of the residence to which the IP address was assigned, *it remained likely* that the source of the transmissions was inside that residence." *Id.* at 740 (emphasis added).**

In general, federal courts routinely deny motions to suppress based on an open wireless argument, holding that there was probable cause to search and seize defendant's computers. *See, e.g.*, *United States v. Carter*, 549 F. Supp. 2d 1257, 1268-69 (D. Nev. 2008) ("[T]he Court agrees that … there would still have remained a likelihood or fair probability that the transmission emanated from the subscriber's place of residence and that evidence of child pornography would be found at that location."; *United States v. Merz*, 2009 WL 1183771, at *5 (E.D. Pa. May 4, 2009) ("The court also concludes there was a sufficient connection between the IP address … and the physical location to which the IP address was linked to establish probable cause to search the physical location."). *See also*, *United States v. Massey*, No. 4:09CR506-DJS, 2009 WL 3762322 (E.D. Mo. Nov. 10 2009); *United States v. Hibble*, No. CR 05-1410 TUC DCB (HCE), 2006 WL 2620349 (D. Ariz. Sept. 11, 2006).

The Open Wireless Defense has also been raised by defendants in civil copyright infringement actions. In *Arista Records, Inc. v. Musemeci*, the defense arose on a motion to vacate summary judgment. No. 03 CV 4465, 2007 WL 3124545, at *5 (E.D.N.Y. Sept. 18, 2007). **The court concluded that the defendant's claim that an unsecured wireless router at his residence could have been used by an outside party to commit the alleged infringing activity was not a meritorious defense and denied the motion.** *Id.* In *Capitol Records, Inc. v. Thomas-Rasset*, the court excluded expert testimony on the Open Wireless Defense because the defendants were unable to offer sufficient evidence in its support. No. No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *7 (D. Minn. June 11,

2009).  In *Interscope Records v. Leadbetter*, the Open Wireless Defense was similarly excluded.  No. 03 CV 4465 (DGT) (RML), 2007 WL 1217705, at *8 n.8 (W.D.Wash. 2007).

### Secondary Liability and the "Willful Blindness" Doctrine

The unlikely defendant who escapes liability for direct copyright infringement vis-à-vis the Open Wireless Defense will nevertheless have to contend with liability for contributory copyright infringement. Contributory infringement occurs when a party who, with knowledge of the infringing activity, induces causes, or materially contributes to the infringing conduct of another.  *Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

A defense counsel's first instinct is to allege that a client is innocent where a client had no actual knowledge that the conduct it engaged in (i.e. providing internet access to copyright infringers) constituted contributory infringement.  Before advancing those claims, however, an attorney would be well advised to take a close look at the conduct for which persons engaging in infringing activity have been held responsible.  Because the typical wireless router is readily capable of logging traffic, a defendant cannot escape liability by claiming they never made the effort to analyze such traffic.  Willful blindness is knowledge.  *In re Aimster Copyright Litigation*, 334 F.3d 643, 654 (7th Cir. 2003); *Deep v. Recording Industry Ass'n of America, Inc.*, 540 U.S. 1107 (2004).

Thus, an internet account holder who maintains a wireless network and fails to monitor the traffic on the network is liable for contributory copyright infringement.  *Id.*  Copyright law may lead to harsh results, but it nevertheless is the law.

### Conclusion

The Open Wireless Defense is not viable.  First, from a technical standpoint it is extremely challenging to establish that a wireless network was unsecured on a past date and if the related evidence has not been preserved then a defendant may be subject to liability for spoliation of evidence upon raising the defense.  Second, it has never been successfully used to avoid liability for direct copyright infringement in any court in the United States.  Finally, even if it were established that a third party used an account holder's internet account to illegally download copyright content, the account holder would not be able to escape liability for contributory copyright infringement.



**Exhibit C**

**From:** Brett Gibbs [mailto:blgibbs@wefightpiracy.com]
**Sent:** Wednesday, January 18, 2012 3:36 PM
**To:** Steven Yuen
**Subject:** 11-5630 - Deposition of Ms. Wong; Settlement Proposal


Mr. Yuen:

Per the attached Court Order, my client, Hard Drive Productions, Inc. has been given the opportunity to depose Ms. Wong in the matter of Hard Drive Productions, Inc. v. John Doe, 3:11-cv-5630. I intend to set up that deposition in the next week, and take Ms. Wong's deposition sometime in the next month.

As lead counsel for Plaintiff in this matter, I am emailing you to try to meet and confer with you about a date/time period in which to set up this deposition. Hopefully, both parties can agree on a date/time slot that work with everyone's schedules. Please call me or email me back so that we can discuss this.

If I don't hear back from you on this issue by **Monday, January 23, 2012**, and/or we can't work out a time/date that is mutually agreeable by that time, I will simply schedule a time/date that works best for my schedule. Considering your past delays in this case, this deadline is firm.

Further, I just want to confirm that your firm would accept service of the deposition subpoena on Ms. Wong's behalf. You had mentioned that you would do so in previous correspondence, but I just wanted to confirm that this remains your stance.

Also, my client is always open to settling this matter before going into this potentially costly deposition. In light of this, Plaintiff offers Ms. Wong a settlement offer of **$3,000**, lump sum, to voluntarily dismiss the case with prejudice, and not pursue the court-authorized deposition. Additionally, we can set up the settlement to cover *any and all* individuals who may have used Ms. Wong's IP address to infringe on my client's copyrighted works. In other words, this settlement would cover members of Ms. Wong's household as well, and all names would stay anonymous. Again, the choice is hers. Please present our offer to her with all of the background. My client will entertain reasonable counteroffers should Ms. Wong make the proposal, but, if not, I suggest we work out a deposition date/time as soon as practicable.

Either way, please get back to me by **Monday, January 23, 2012,** answering the questions above.

Regards,

--
Brett L. Gibbs, Esq. (SBN 251000)
Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-341-5318
blgibbs@wefightpiracy.com

NOTICE: THIS EMAIL IS INTENDED TO BE PART OF A SETTLEMENT NEGOTIATION AND IS NOT ADMISSIBLE UNDER FRE RULE 408.

NOTICE:
This communication is covered by the Electronic Communications Privacy Act, found at 18 U.S.C. 2510 et. seq.

**Exhibit D**